**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SERVICE SOLUTIONS U.S., LLC,

                        Plaintiff,

      v.                                    Case No. 13-10534
                                            HON. TERRENCE G. BERG

AUTEL.US INC., and AUTEL
INTELLIGENT TECHNOLOGY
CO., LTD.,

                        Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS'
<u>MOTIONS TO DISMISS (DKT. 16)</u>**

       This is a patent infringement suit. Plaintiff Service Solutions U.S., LLC ("Service Solutions") is alleging both direct and induced infringement of seven patents related to tire pressure monitoring technologies by Defendants Autel.US Inc. ("Autel US") and Autel Intelligent Technology Co., LTD ("Autel ITC").

       Defendants have moved to dismiss the case under Federal Rules of Civil Procedure 12(b)(2), (5), and (6).[1] Autel ITC moves to dismiss because (1) this Court lacks personal jurisdiction and (2) service of process was insufficient. Both Defendants move to dismiss the complaint for failing to adequately plead induced infringement. For the reasons stated below, Defendants' motions are DENIED.

---

[1] Defendant Autel ITC moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2),(5), and (6). Defendant Autel US joins Autel ITC's 12(b)(6) motion—any portion of this opinion which relates to the 12(b)(6) motion necessarily applies to both Defendants, whereas portions of this opinion relating to the 12(b)(2) and 12(b)(5) motions apply only to Autel ITC.

## I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff Service Solutions owns numerous patents related to various "Tire Pressure Monitoring System" ("TPMS") tools and technologies.[2]  (Dkt. 1, Compl., ¶¶ 10, 15, 20, 25, 30, 35, and 40).  Defendants Autel ITC (a Chinese company) and Autel US (a wholly owned subsidiary of Autel ITC, located in the state of New York) purportedly manufacture three products that Plaintiff believes infringe upon its patents, to wit:  AUTEL TPMS Diagnostic & Service Tools MaxiTPMS TS401, MaxiTPMS TS501, and MaxiTPMS TS601 (collectively "the allegedly infringing products").  (*Id.* at ¶¶ 5-6)  Plaintiff further claims that Defendants import the allegedly infringing products into the United States and sell them through various retailers throughout the country, including several in Michigan.  (*Id.*).

On February 8, 2013, Plaintiff filed suit seeking monetary compensation for prior infringement and injunctive relief to prevent future infringing conduct.  In its complaint, Plaintiff asserts that by "making, using, selling, offering to sell and/or importing [the allegedly infringing products] into the United States," Defendants directly infringed all seven of the patents-in-suit.  (*Id.* at ¶¶ 11, 16, 21, 26, 31, 36, and 41).  Likewise, Plaintiff also claims that Defendants have actively induced infringement by instructing third-parties in the use of the allegedly infringing

---

[2] The seven patents at issue in this case are as follows:  6,904,796 – "Remote Tire Monitoring System Tool;" 7,623,025 – "Tire Pressure Monitor Initiation Tool with Vehicle Data Interface;" 7,639,122 – "Tire Pressure Monitor System Tool with Vehicle Entry System;" 8,035,499 – "Tire Pressure Monitor System Module;" 8,058,979 – "Tire Pressure Monitor Initiation Tool with Vehicle Data Interface;" 8,072,320 – "Tire Pressure Monitor System Tool with Vehicle Entry System;" and 8,183,993 – "Tire Pressure Monitor System Tool with Parts Number Database."

products and by advertising and promoting the benefits of the allegedly infringing products.  (*Id*. at ¶¶ 12, 17, 22, 27, 32, 37, and 42).

Defendants filed their motion to dismiss on April 4, 2013 (Dkt. 16).  Plaintiff responded to the motion on April 29, 2013 (Dkt. 19) and Defendant Autel ITC filed a reply on May 10, 2013 (Dkt. 20).  The Court subsequently heard argument on the motion on May 29, 2013.  During that hearing, Plaintiff offered two additional exhibits as evidence in support of its jurisdictional arguments.  Following the hearing, both of these exhibits were filed with the Court (Dkt. 21).  Shortly thereafter, Defendant Autel ITC sought leave to file a supplemental brief in support of its motion (Dkt. 27).  The Court granted Autel ITC's request, prompting Plaintiff to seek leave to file a supplemental reply brief (Dkt. 29).  That request was also granted and the supplemental brief was filed on June 26, 2013 (Dkt. 30).  The motion has now been fully and thoroughly briefed and is ready for decision.

## II.  DISCUSSION

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

#### 1)  *Legal Standard*

Under the law of the Federal Circuit,[3] in order to establish personal jurisdiction over a non-resident defendant, a plaintiff must demonstrate that jurisdiction is appropriate under both the relevant state's long-arm statute, and the

---

[3] *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995) (where claims are "intimately involved with the substance of the patent laws," the law of the Federal Circuit applies to determinations of personal jurisdiction over a non-resident defendant).  Because this case involves claims arising under patent law, the Court applies the personal jurisdiction jurisprudence of the Federal Circuit Court of Appeals.

due process requirements of the Constitution. *See Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

Where, as here, "'the parties have not conducted discovery, [Plaintiff] needs only to make a prima facie showing that [Autel ITC is] subject to personal jurisdiction.'" *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (citing *Avocent Huntsville Corp. v. Aten Int'l Co.,* 552 F.3d 1324, 1328 (Fed. Cir. 2008)); *see also Elecs. for Imaging, Inc.,* 340 F.3d at 1349 ("[W]here the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction. In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor.") (internal citations omitted).

### 2) *Analysis*

In Michigan, personal jurisdiction over a corporation may be general, *see* MCL § 600.711, or limited, *see* MCL § 600.715. General jurisdiction requires that a defendant have "'continuous and systematic' contacts with the forum state." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984). Here, it is uncontroverted that the Court lacks general jurisdiction over Autel ITC. Accordingly, the Court will focus on the question of limited jurisdiction.

4

Michigan law specifies five activities that will subject a non-resident corporation to limited jurisdiction: "(1) the transaction of any business within the state; (2) the doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; (3) the ownership, use, or possession of any real or tangible personal property situated within the state; (4) contracting to insure any person, property, or risk located within this state at the time of contracting; and (5) entering into a contract for services to be performed or for material to be furnished in the state by the defendant." MCL § 600.715. Regardless, "[t]he Michigan Supreme Court has construed Michigan's Long-Arm Statute to bestow the broadest possible grant of personal jurisdiction consistent with due process." *Audi AG and Volkswagen of America, Inc. v. D'Amato*, 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004), *see also Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003) ("[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process."). Thus, limited personal jurisdiction exists if the exercise of such jurisdiction comports with the requirements of Constitutional due process.

The Federal Circuit evaluates the constitutionality of what Michigan calls "limited", and what it calls "specific," jurisdiction under a three part test: (1) whether the defendant has purposefully directed its activities at residents of the forum state; (2) whether the litigation results from alleged injuries that arise out of or relate to those activities; and (3) whether the assertion of personal jurisdiction is

5

reasonable. *See Akro Corp*, 45 F.3d at 1545-46 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-76 (1985)). "The first two factors correspond to the "minimum contacts" prong of the *International Shoe* analysis, and the third factor with the "fair play and substantial justice" prong. While the plaintiff bears the burden to establish minimum contacts, upon this showing, defendants must prove that the exercise of jurisdiction is unreasonable." *Elecs. for Imaging, Inc.,* 340 F.3d at 1350 (internal citations omitted).

     a. *"Purposefully directed"*

The Supreme Court has long held that the exercise of limited personal jurisdiction over an out-of-state defendant is proper where the defendant has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). In fact, the requirement of minimum contacts is viewed as the "constitutional touchstone" of the determination. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985) (quoting *International Shoe*, 325 U.S. at 316).

There is considerable disagreement, however, over the quality and quantity of activities necessary to establish "minimum contacts;" in particular, Courts disagree over whether the mere placement of products into the "stream of commerce," with the knowledge that they may end up in the forum state, is enough to sustain jurisdiction.[4] The Supreme Court has twice revisited this issue, and both

---

[4] Plaintiff invokes the stream of commerce theory as the basis of this Court's personal jurisdiction over Defendant Autel ITC. (Dkt. 1, Compl. ¶ 6).

4:13-cv-10534-TGB-APP   Doc # 31   Filed 10/18/13   Pg 7 of 21   Pg ID 544

cases have resulted in plurality opinions. *See Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 112 (1987); *J. McIntyre Machinery, Ltd. v. Nicastro,* 564 U.S. ——, 131 S.Ct. 2780 (2011). Not surprisingly, the Circuit Courts themselves continue to be split on this question, with some favoring Justice Brennan's pure "stream of commerce" theory, others embracing Justice O'Connor's "stream of commerce *plus*" standard (both expressed in their *Asahi* opinions), and still others declining to state a preference.

The Federal Circuit recently considered the state of the stream of commerce jurisprudence and concluded that the *Nicastro* plurality left the law regarding personal jurisdiction unchanged. *See AFTG-TG v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012). In so holding, the Federal Circuit determined that its prior precedents were still valid and binding on the subject. *Id.* at 1366. In part due to those precedents, the Federal Circuit has intentionally avoided endorsing either of the *Asahi* positions and continues to assess jurisdiction premised on the stream of commerce theory on a case-by-case basis. *See Id.* at 1363*; see also Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1566 (Fed. Cir. 1994).

Although the Federal Circuit has yet to adopt either of the *Asahi* positions as controlling, it is helpful to begin by considering consider whether Autel ITC's contacts with Michigan are sufficient under Justice O'Connor's more stringent "stream of commerce *plus*" standard. For if a defendant's conduct satisfies Justice O'Connor's test, it will necessarily satisfy Justice Brennan's less stringent, pure stream of commerce or "foreseeability" test, as well.

In her *Asahi* opinion, Justice O'Connor provides various examples of conduct that would suggest an "intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112 (O'Connor, J.). These are exactly the plus factors that Plaintiff argues are present here.

Autel ITC argues that this Court cannot exercise personal jurisdiction under a stream of commerce theory because Autel ITC never did "anything purposefully directed toward Michigan." (Dkt. 16, Def.'s Mot. 7). In response, Plaintiff argues that Autel ITC has done much more than merely place its products into the stream of commerce—Plaintiff asserts that Autel ITC (1) instructs users regarding usage of the allegedly infringing products by referencing cars manufactured in Michigan, (2) utilizes a distribution network in Michigan whereby CARQUEST[5] advertises the allegedly infringing products using Autel ITC's registered trademark, and (3) obtains (through a trade association) on-board diagnostic parameter IDs[6] from

---

[5] CARQUEST Auto Parts is a national auto-supply chain with thousands of stores in North America, including approximately 30 locations within the Eastern District of Michigan. *Store Locator*, CARQUEST AUTO PARTS, http://www.carquest.com/webapp/wcs/stores/servlet/StoreLocatorView (last visited October 8, 2013). Plaintiff has offered evidence showing that at least one, if not several, of the CARQUEST stores within the Eastern District of Michigan offer the allegedly infringing products for sale. (*See* Dkt. 19, Pl. Resp., Exs. 4-5).

[6] "On-board diagnostic parameter IDs" or "OBD-II PIDS" are specific codes, used with various diagnostic scanning equipment, to request data from a vehicle. These codes are part of SAE ("Society of Automotive Engineers) Standard J1979, and have been required in all light-duty vehicles (i.e. less than 8,500 pounds) sold in North America since 1996.

OEMs[7] located in Michigan.  (Dkt. 19, Pl. Resp. 7).  Accepting these assertions as true, it is clear that Autel ITC has taken actions that are intentionally directed toward Michigan.  Under either of the stream of commerce theories considered in *Asahi*, these actions are sufficient to constitute minimum contacts with the state of Michigan.[8]  *See Beverly Hills Fan*, 21 F.3d at 1566; *Nuance Communications Inc. v. Abbyy Software House*, 626 F.3d 1222, 1233-35 (Fed. Cir. 2010).

Further, at oral argument and in its supplemental briefing, Plaintiff argued that Autel ITC directed activities toward Michigan in two additional ways.  First, Plaintiff alleges that Autel ITC grants limited warranties to Michigan customers.  Second, Autel ITC allegedly operates an interactive website which can be used first to register (allegedly infringing) products and then to download updates for them.  (Dkt. 21, Pl. Supp. Ex.; Dkt. 30, Pl. Supp. Rep.).  Such electronic "updates" amount to digital instructions transmitted from Autel ITC to end users, in order to change software programming contained in various products, at least some of which are physically located in Michigan.  These contacts constitute additional, though unnecessary, plus factors supporting jurisdiction.  Plaintiff has made a prima facie case that Defendant Autel ITC has purposefully directed its conduct at the forum state.

---

[7] "OEMs" refers to "Original Equipment Manufacturers," and signifies automobile manufacturing companies such as GM, Ford, and Chrysler.

[8] Autel ITC contends that its American subsidiary, Autel US, is subject to this Court's jurisdiction while Autel ITC, located in China, is not.  (Dkt. 16, Def. Mot. 6; Dkt. 27, Ex. 2, Def. Supp. Resp. 2, n.1).  One prong of this argument is the averment that the allegedly infringing products are delivered to Autel US in China, and that therefore Autel ITC does not itself distribute those products in the United States.  Even if the Court were to accept this contention as true, it does not negate the other arguments as to Autel ITC's minimum contacts with this jurisdiction.

       b.  *"Arise out of or relate to"*

Having concluded that Autel ITC's conduct was purposefully directed at the state of Michigan, the Court must now consider whether the alleged infringement arises out of or relates to that conduct. *See Akro Corp.*, 45 F.3d at 1548. Plaintiff's complaint alleges that Autel ITC's products—which were intended, in part, to be used on vehicles manufactured in the state of Michigan and sold to customers in the state of Michigan—infringed on Service Solutions' patents (Dkt. 1, Compl., ¶¶ 5-6). Accepting this allegation as true, the second prong of the due process inquiry is satisfied. *See Synthes v. G.M. dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1298 (Fed. Cir. 2009). Further, as mentioned above, Plaintiff asserts that Defendant receives certain codes necessary to operate the allegedly infringing products from various OEMs within the state of Michigan (Dkt. 19, Ex. 10, ¶¶ 18-23; Dkt. 19, Ex. 11, ¶8). This too demonstrates a nexus between Defendants' activities in Michigan and the proliferation of the allegedly infringing products.

Plaintiff has satisfied the first two prongs of the Federal Circuit's due process test and thus met its burden as to proving personal jurisdiction.

       c.  *"Reasonable"*

Plaintiff having shown that the exercise of jurisdiction comports with due process, the burden now shifts to Autel ITC to defeat jurisdiction, by making "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Akro* Corp., 45 F.3d at 1549 (quoting *Burger King*, 471 U.S. at 477). Still, such defeats of personal jurisdiction "are limited to the rare

situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."  *Id*. (quoting *Beverly Hills Fan*, 21 F.3d at 1568).

Although Autel ITC does not argue that the exercise of jurisdiction over it would be unreasonable, focusing instead on its perceived lack of minimum contacts with the forum state, the Court must assure itself that the exercise of jurisdiction comports with "fair play and substantial justice."  This is accomplished by considering, "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies."  *Synthes,* 563 F.3d at 1299 (citing Burger King, 471 U.S. at 477).

While it is true that the litigation of a case in the United States presents a significant burden to a foreign company such as Autel ITC, the Federal Circuit has found that burden to be lessened where, as here, Autel ITC has retained the same counsel as its American subsidiary.  *See Nuance Communications*, 626 F.3d at 1234. Likewise, Michigan has a clear interest in promoting compliance with federal laws relating to patents owned by its residents, and Plaintiff has an interest in litigating this case in the jurisdiction where it is located.  *See Synthes,* 563 F.3d at 1299-1300.

11

Weighing all the relevant factors, the Court finds that the exercise of personal jurisdiction is reasonable.

The Court concludes, based upon the preceding findings, that (1) Autel ITC has purposefully directed its activities at residents of the forum state; (2) this litigation results from alleged injuries that arise out of or relate to those activities; and (3) the assertion of personal jurisdiction is reasonable. Therefore, the Court has limited personal jurisdiction over Defendant Autel ITC.

### 3)   Federal Claim Jurisdiction

Plaintiff has also argued, in the alterative, that Federal Rule of Civil Procedure 4(k)(2) (authorizing jurisdiction where "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction") provides for federal claim jurisdiction in this case. However, in light of the Court's prior conclusion that Autel ITC is subject to personal jurisdiction in Michigan, the Court need not address the question of federal claim jurisdiction.

## B.   Motion to Dismiss for Insufficient Service of Process

### 1)   *Legal Standard*

Defendant Autel ITC has also moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5), under which an action can be dismissed for insufficient service of process. In evaluating a motion made pursuant to Rule 12(b)(5), the Court examines whether service was effectuated in accordance with the terms of Federal Rule of Civil Procedure 4. *See Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1016 (E.D. Mich. 2002).

**2)      Discussion**

**i)      Federal Rule of Civil Procedure 4**

Under the Federal Rules of Civil procedure, service of process upon a

corporation is governed by Rule 4(h), which states:

> (h) Serving a Corporation, Partnership, or Association. Unless federal
> law provides otherwise or the defendant's waiver has been filed, a
> domestic or foreign corporation, or a partnership or other
> unincorporated association that is subject to suit under a common
> name, must be served:
>
> > (1) in a judicial district of the United States:
> >
> > > (A) in the manner prescribed by Rule 4(e)(1) for serving an
> > > individual or
> > >
> > > (B) by delivering a copy of the summons and of the complaint to
> > > an officer, a managing or general agent, or any other agent
> > > authorized by appointment or by law to receive service of
> > > process and—if the agent is one authorized by state and the
> > > state so requires—by also mailing a copy of each to the
> > > defendant

Further, Rule 4(e)(1) provides:

> (e) Serving an Individual Within a Judicial District of the United
> States. Unless federal law provides otherwise, an individual—other
> than a minor, an incompetent person, or a person whose waiver has
> been filed—may be served in a judicial district of the United States by:
>
> > (1) following state law for serving a summons in an action brought
> > in courts of general jurisdiction in the state where the district
> > court is located or where service is made.

**ii)      Service Under State Law**

Here, Plaintiff attempted to serve Autel ITC in the state of New York, at the

North American address advertised on Autel ITC's website.  Therefore, under Rule

4(e)(1), service of process would be proper if it comported with either the law of the

Michigan or the law of New York.

In its response to Autel ITC's motion, Plaintiff relies upon New York's law

governing service of process on limited liability companies, which states:

> (a) Service of process on any domestic or foreign limited liability
> company shall be made by delivering a copy personally to (i) any
> member of the limited liability company in this state, if the
> management of the limited liability company is vested in its
> members, (ii) any manager of the limited liability company in this
> state, if the management of the limited liability company is vested
> in one or more managers, (iii) to any other agent authorized by
> appointment to receive process, or (iv) to any other person
> designated by the limited liability company to receive process, in
> the manner provided by law for service of a summons as if such
> person was a defendant. Service of process upon a limited liability
> company may also be made pursuant to article three of the limited
> liability company law.

N.Y. C.P.L.R. 311-a (McKinney).  In general, the purpose of C.P.L.R. 311 is to

provide the defendant with notice of the commencement of the impending action.

*See Fashion Page, Ltd. V. Zurich Ins. Co.*, 50 N.Y.2d 265, 271 (1980).  While the

statute identifies specific individuals as agents qualified to accept service on behalf

of the corporation, the list has been judicially expanded over the years to include

"employees of lesser rank who, under a variety of titles, act as managing or general

agents for the corporation."  *See e. g., Martin v. Archway Inn*, 164 A.D.2d 843, 845

(1990) (finding that service was proper even though the agent served was not

identified in the enumerated list of C.P.L.R. 311); *The Haskell Co. v. Radiant

Energy Corp.*, 2007 WL 2746903 (E.D.N.Y. Sept. 19, 2007) (holding that the

corporation was properly served when the process server served the agent at his

residence believing that the agent was one of only three employees of corporation,

14

and the agent accepted the papers and provided them to the appropriate individual at the corporation in a timely matter).

New York courts construe C.P.L.R. 311 liberally, tending to enlarge (rather than restrict) the group of individuals qualified to accept service of process. *See Fashion Page* at 271. As a result, federal courts applying New York law have held that when a process server "serves someone who does not have express authorization to accept service for a corporation, service is proper under N.Y.C.P.L.R. § 311 if it is made in a manner which, objectively viewed, is calculated to give the corporation fair notice of the suit." *Krape v. PDK Labs Inc.*, 194 F.R.D. 82, 85 (S.D.N.Y. 1999). "A corporation is prevented from 'complain[ing] that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of defendant's own employees, and delivered the summons according to their directions.'" *M'Baye v. World Boxing Ass'n*, 429 F. Supp. 2d 652, 659 (S.D.N.Y. 2006) (quoting *Kuhlik v. Atlantic Corp. Inc.,* 112 F.R.D. 146, 148 (S.D.N.Y. 1986)).

It is uncontested that Plaintiff's agent served process on Mr. Austin Cardany, Technical Support Director for Autel US, at the Huntington, New York offices of Autel US (which is also listed on Autel ITC's website as its "North American" address). Autel ITC argues this was improper because Mr. Cardany has never been employed by Autel ITC and is not an officer, resident agent, director, trustee, or person in charge of an office or business establishment of Autel ITC, as outlined in

Rule 4(h)(1)(B). However, this argument ignores the terms of Rule 4(h)(1)(A), which permit service in accordance with the law of the state where that service occurs.

As previously discussed, service is proper in New York where it is made in a manner reasonably calculated to give the defendant fair notice of the lawsuit. Such notice occurred in this case. On Autel ITC's website, under the "About Autel" tab, there are four headings: "Corporation Information," "Vision & Mission," "NewsRoom," and "Job Seekers." Under the "Corporate Information" heading there are three subheadings: "Contact US," "Milestones," and "About Autel." On the "Contact US" page, there is a section for "North America" that provides the following address: 116 Spring Road, Huntington, New York 11743.[9] Plaintiff's agent went to this address to attempt to serve a copy of the summons and complaint on Gary Deluca, the CEO of Autel US. Upon arriving at that address, the process server was directed to Mr. Cardany. (Dkt. 19, Pl. Resp. 16). These circumstances are essentially the same as those discussed in *M'Baye* and *Kuhlik*. Therefore, under New York law (and Fed. R. Civ. P. 4(h)(1)(A) and 4(e)(1)), service on Mr. Cardany was legally sufficient to constitute service upon Autel ITC.[10]

---

[9] *Contact US*, AUTEL, http://www.auteltech.com/autelcms/CorporateInformation/461.jhtml (last visited October 16, 2013).

[10] Autel ITC further attempts to defeat service by offering an affidavit from Mr. Cardany wherein he states, "I never informed, told, or otherwise communicated to the process server, Nelson Carvajal, that I hold, or ever held, the position of "Manager" with Autel ITC. I also never informed, told, or otherwise communicated to Nelson Carvajal that I was authorized, by appointment or otherwise, to receive service for Autel ITC…" (Dkt. 20, Def. Reply, Ex. E, Second Decl. of Austin Cardany). These facts do not undermine the validity of service. First, it is worth noting that Mr. Cardany does *not* say that he informed Mr. Carvajal that he was *not* authorized to receive service. Moreover, regardless of his actual authorization (or the lack thereof), there is no dispute that Mr. Cardany did accept service, and Autel ITC thereafter received fair notice of the suit.

**C.     Motion to Dismiss for Failure to Plead Induced Infringement**

*1)     Legal Standards*

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint; dismissal is appropriate where a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))*; see also Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008); *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1332 (Fed. Cir. 2012). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. 662 (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss, the allegations in the complaint are taken as true, and all reasonable inferences are drawn in favor of the plaintiff. *Jones,* 521 F.3d at 559. However, a plaintiff must provide more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 677.

In order to properly plead induced infringement, a plaintiff must allege that a person "knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1306 (Fed.

17

Cir. 2006).  The allegations must include that the defendant had knowledge of the patents-in-suit because such knowledge is a necessary prerequisite of being able to "*knowingly* induce infringement."  *Id*. at 1304.

### 2)   *Discussion*

Defendants argue that Plaintiff fails to state a proper claim for induced infringement because the complaint alleged neither the requisite pre-suit knowledge of the patents-in-suit, nor an intent to induce infringement.  (Dkt. 16, Def.'s Mot. 10).  In response, Plaintiff asserts that magic words are unnecessary and that the allegations in the complaint are sufficient for the Court to conclude that Defendants possessed the specific intent to induce infringement and had knowledge of the patents-in-suit.  (Dkt. 19, Pl. Resp. 20).  Alternatively, Plaintiff also argues that knowledge of the patents-in-suit may be established through the filing of the complaint.  (*Id*.).

Regarding intent, drawing all reasonable inferences in Plaintiff's favor, the allegations that Defendants advertised an infringing use are sufficient under Federal Circuit precedent to satisfy the intent requirement.  *See In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1341 (Fed. Cir. 2012).

As to the question of knowledge, and whether pre-suit knowledge must be alleged to plead induced infringement properly, there are two competing approaches:  The first, advanced by Defendants, is best articulated by *Proxyconn Inc. v. Microsoft Corp.*, No. 11-1681, 2012 WL 1835680, *5-6 (C.D. Cal. May 16,

2012), where the court held that "'knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement.'" *See also Secured Mail Solutions, LLC v. Advanced Image Direct, LLC*, No. 12-01090, p. 11 (C.D. Cal. Jan. 30, 2013); *Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 2012 WL 5266049, at \*7 (M.D. Fla. Oct. 24, 2012); *Xpoint Technologies, Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010); *Mallinckrodt, Inc. v. E–Z–Em Inc.*, 670 F. Supp. 2d 349, 354 n. 1 (D. Del. 2009); *Aguirre v. Powerchute Sports, LLC*, 2011 WL 2471299, at \*3 (W.D. Tex. June 17, 2011); *Zamora Radio, LLC v. Last.FM, Ltd.*, 758 F. Supp. 2d 1242, 1257 (S.D. Fla. 2010). Other courts have followed *Walker Digital, LLC v. Facebook, Inc.*, which found that "there is no legal impediment to having an indirect infringement cause of action limited to post-litigation conduct," and that "a defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint" is sufficient to plead induced infringement. *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del. 2012); *see also Intellect Wireless Inc. v. Sharp Corp.*, 2012 WL 787051, at \*11 (N.D. Ill. March 9, 2012); *Trading Techs. Intern., Inc. v. BCG Partners, Inc.*, 2011 WL 3946581, at \*4 (N.D. Ill. Sept. 2, 2011); *SoftView, LLC v. Apple Inc.*, 2012 WL 3061027, at \*7 (D. Del. July 26, 2012); *E.I. Du Pont De Nemours and Co. v. Heraeus Holding GMBH*, 2012 WL 4511258, at \*6 (D. Del. Sep. 28, 2012); *InMotion Imagery Techs. v. Brain Damage Films*, 2012 WL 3283371 (E.D. Tex. Aug. 10, 2012); *Symantec Corp. v. Veeam Software Corp.*, 2012 WL 1965832, at \*4 (N.D. Cal. May 31, 2012). Under *Walker Digital*, the ability (or inability) of a

plaintiff to collect damages for induced infringement arising from pre-suit conduct does not affect whether a claim of induced infringement should be allowed to go forward.

The Court of Appeals for the Federal Circuit has yet to adopt either of these two positions and thus, this Court must determine which of these lines of reasoning is most persuasive. As a matter of common sense, once Defendants became aware of this lawsuit, they had demonstrable knowledge of the patents-in-suit. Any activity undertaken by Defendants to encourage infringing product use since then would clearly be done with knowledge of the patents. Thus, the Court will join those courts that have followed *Walker Digital* and hold that pre-suit knowledge of the patents-in-suit is unnecessary to properly plead induced infringement. Plaintiff's service of that complaint upon Defendants is sufficient to show knowledge of the patents-in-suit at least as of the date of service and that knowledge is enough to sustain Plaintiff's allegations of induced infringement.[11]

Plaintiff's complaint sufficiently alleges both the intent to induce infringement and knowledge of the patents-in-suit.[12] Defendants' motions to dismiss, therefore, are denied to the extent that they relate to Plaintiff's allegations of induced infringement.

---

[11] Whether Defendants knew of the patents-in-suit before being served with this lawsuit remains to be determined. If Plaintiff prevails on its claim of induced infringement but is ultimately unable to show such pre-service knowledge, damages will only be allowed to the extent that they are the result of induced infringement occurring after the date of service.

[12] Although the complaint does not contain the words "Defendants had knowledge of the patents-in-suit," the Court is persuaded that, taken as a whole and drawing all reasonable inferences in favor of Plaintiff, the complaint sufficiently alleges that Defendants necessarily had knowledge of the patents—at the latest—as of the date of service. *See Walker Digital*, 852 F. Supp. 2d at 565-66, n.11 (suggesting that practical considerations, such as ease-of-amendment, judicial economy, and actual knowledge, weigh in favor of denying motion to dismiss for lack of knowledge).

### III.   CONCLUSION

For the reasons set forth above, Defendant Autel ITC's Motion to Dismiss for Lack of Personal Jurisdiction and for Insufficient Service of Process, and Defendants' Joint Motion for Failure to Adequately Plead Induced Infringement are all **DENIED**.


Dated:  October 18, 2013                    s/Terrence G. Berg
                                            TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE


### Certificate of Service

I hereby certify that this Order was electronically submitted on October 18, 2013, using the CM/ECF system, which will send notification to all parties.

                                            s/A. Chubb
                                            Case Manager