IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOSCH AUTOMOTIVE SERVICE
SOLUTIONS INC.,

      Plaintiff,

vs.

AUTEL, US INC. and AUTEL
INTELLIGENT TECHNOLOGY
CO., LTD.,

      Defendants.

Case No: 2:13-cv-10534

Judge Terrence G. Berg
Magistrate Judge Laurie J. Michelson

**PLAINTIFF'S FINAL CLAIM CONSTRUCTION REPLY BRIEF**

The plaintiff, Bosch Automotive Service Solutions Inc. ("Bosch"), by its undersigned attorneys, submits this Final Claim Construction Reply Brief.

November 11, 2016      Bosch Automotive Service Solutions Inc.

      By: s/Timothy M. McCarthy

John E. Berg (P40428)
CLARK HILL PLC
500 Woodward Ave., Suite 3500
Detroit, MI 48226
(313) 965-8300
Attorneys for Plaintiff
jberg@clarkhill.com

Timothy M. McCarthy
(Illinois Bar No. 6187163)
CLARK HILL PLC
150 N. Michigan Ave., Suite 2700
Chicago, IL 60601
(312) 985-5561
Attorneys for Plaintiff
tmccarthy@clarkhill.com

# Table of Contents

Table of Contents ................................................................................................... i

Table of Authorities ............................................................................................. ii

I.     "Module claims" . ....................................................................................... 1

       A.     The module claims define structure. ..................................................... 1

       B.     The use of a dictionary is acceptable. ................................................... 1

II.    Determining a "type" of TPMS requires construction .................................. 3

III.   Claim interpretation disputes. ...................................................................... 3

# Table of Authorities

**Cases**

*In re Translogic Tech., Inc.*, 504 F.3d 1249 (Fed. Cir. 2007) ................................1

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) *cert. denied*, 546 U.S. 1170 (2006) ........................................................1, 2

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) .................2

*Ex parte Garza*, 2015 Pat. App. LEXIS 1463 (March 6, 2015) ...........................3

**Other sources**

IEEE 100, THE AUTHORITATIVE DICTIONARY OF IEEE STANDARDS TERMS (7th ed. 2000) ........................................................................2

I.   **"Module" claims.**

Bosch offers an accepted definition of this term as demonstrated by a definition in a publication of persons of skill in the art. Autel proposes its own definition. Bosch replies to Autel's criticism on two bases.

   A.   **The module claims define structure.**

Autel objects that the module claims do not define structure and therefore should be considered means-plus-function claims. Autel's own proposal is that "module" means "hardware and/or software," which is itself structure. So Autel's own suggestion defeats this argument.

   B.   **The use of a dictionary is acceptable.**

A Court may consult dictionaries and learned treatises at any time to determine the meaning of disputed terms. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1310 (Fed. Cir. 2005) (*en banc*), *cert. denied*, 546 U.S. 1170 (2006). This rule is applicable here because, while the specification certainly is the best guide to the meaning of claim terms, the meaning of a claim term is the meaning understood by a person of ordinary skill in the art at the time of the invention and in the context of the entire patent disclosure. *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). Certainly, claim terms in plain English, the meaning of which is apparent to members of the jury, should be given its ordinary and customary meaning. But a technical term relating to the underlying technology might need to

be defined, as recognized by the Federal Circuit in *Phillips*:

> A dictionary definition has the value of being an unbiased source "accessible to the public in advance of litigation." *Vitronics*, 90 F.3d at 1585. As we said in *Vitronics*, judges are free to consult dictionaries and technical treatises at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.

*Phillips*, *supra*, 415 F.2d at 1322-23, *citing Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n. 6, 1586 (Fed. Cir. 1996).

Moreover, Autel's criticism of the dictionary as "outdated" is inaccurate and unsupported. Bosch cited the Seventh Edition of IEEE 100, THE AUTHORITATIVE DICTIONARY OF IEEE STANDARDS TERMS, a publication of the Institute of Electrical and Electronic Engineering, the most recent edition before the priority dates of the patents-in-suit. Autel does not suggest that this publication was withdrawn before the priority dates or that the definition offered was outmoded at the time of the priority dates. Autel merely scoffs that the publication was "outdated," criticism that should be ignored.

Also note that Autel's expert witness claims to be an active member of the Institute of Electrical and Electronic Engineering. Docket Entry 71 at 5, ¶ 16. He

also asserts that a person of skill in the art has a bachelor's degree in electrical engineering or computer engineering.  *Id.* at 6, ¶ 21.  Certainly this hypothetical engineer would be expected to use the standards definitions of its professional organization.

Additionally, the IEEE 100 reference was accepted by the Patent Trial and Appeals Board of the United States Patent and Trademark Office in a matter involving a patent with a priority date seven years after publication of the reference, a longer period of time than the five years of which Autel complains.  *Ex parte Garza*, 2015 Pat. App. LEXIS 1463 at *6, nn. 6-7 (March 6, 2015).

## II.     Determining a "type" of TPMS requires construction.

For the tools of the patents-in-suit to work, they must know the type of TPMS system.  But the tools cannot merely determine "it's a Siemens" or "it's a Schaeffer."  That information would not help the tool perform any function at all.  Autel recognizes that a TPMS system monitors a vehicle's tire pressure and reports that pressure to a receiver using radio transmissions.  For a tool to be useful, it must determine the details of the radio transmission and how the system reports pressure, which means the tools must determine the low frequency activation band and whether it is modulated or continuous, the high frequency reception band broadcast by the sensor, the ECU protocol, the TPMS address within the ECU, the module communication protocol, and the reset procedure.

### III. Claim interpretation disputes.

Counsel for the parties (Timothy M. McCarthy for the plaintiff; Keith A. Walter for the defendants) conferred on October 28, 2016, in compliance with Paragraph H(9) of the Scheduling Order (Docket Entry No. 58). The parties did not resolve any previous claim construction disputes.

        Respectfully submitted,

        BOSCH AUTOMOTIVE SERVICE
        SOLUTIONS INC.

        By: s/Timothy M. McCarthy

## Certificate of Service

I, Timothy M. McCarthy, certify that I emailed a copy of the foregoing Final Reply Brief to all counsel of record on November 11, 2016.

s/Timothy M. McCarthy

205174439.1 38776/160254